# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

| | |
|---|---|
| Case No.: | 2020AP1936 |

Complete Title of Case:

**STATE OF WISCONSIN,**

      **PLAINTIFF-RESPONDENT,**

    **V.**

**JOSEPH L. SLATER,**

      **DEFENDANT-APPELLANT.**

| | |
|---|---|
| Opinion Filed: | November 2, 2021 |
| Submitted on Briefs: | June 30, 2021 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Stark, P.J., Hruz and Nashold, JJ. |
| Concurred: | |
| Dissented: | |

| | |
|---|---|
| Appellant<br>ATTORNEYS: | On behalf of the defendant-appellant, the cause was submitted on the briefs of *Andrew R. Hinkel*, assistant state public defender of Madison. |
| Respondent<br>ATTORNEYS: | On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Joshua L. Kaul*, attorney general, and *Robert G. Probst*, assistant attorney general. |

COURT OF APPEALS
DECISION
DATED AND FILED

November 2, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP1936-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2002CF149

IN COURT OF APPEALS

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

JOSEPH L. SLATER,

    DEFENDANT-APPELLANT.

---

APPEAL from orders of the circuit court for Marathon County: MICHAEL K. MORAN, Judge. *Reversed and cause remanded with directions.*

Before Stark, P.J., Hruz and Nashold, JJ.

¶1 STARK, P.J. Joseph Slater appeals from orders denying his postconviction motions for additional sentence credit. Slater was on probation in a prior case involving the possession of drugs ("the drug case") when he was arrested and charged with three counts of armed robbery in the instant case ("the armed

robbery case"). Slater's arrest on the armed robbery charges triggered a probation hold in the drug case, and his probation was subsequently revoked. Slater was not, however, transferred to prison to begin serving his previously imposed-and-stayed sentence in the drug case. Instead, after Slater's probation was revoked, he remained in the Marathon County Jail awaiting resolution of the armed robbery case for over three years.

¶2 Pursuant to WIS. STAT. § 973.10(2)(b) (2019-20),[1] Slater argues that his imposed-and-stayed sentence in the drug case did not begin to run until he was received in prison, which did not occur until after his sentencing in the armed robbery case. Slater therefore argues that he is entitled to 1,096 additional days of sentence credit against his sentences imposed in the armed robbery case, representing the three-year period after his probation in the drug case was revoked. Stated differently, Slater argues he is entitled to credit for "the entire time he spent in jail before sentencing" in this case—a total of 1,260 days.

¶3 In response, the State contends that Slater is not entitled to the additional sentence credit he seeks because awarding him credit against his sentences in this case for the three years that he spent in jail after his probation in the prior case was revoked would result in an impermissible award of dual credit against non-concurrent sentences. The State correctly notes that dual credit is permissible only when two sentences are imposed concurrently, *see State v. Boettcher*, 144 Wis. 2d 86, 100, 423 N.W.2d 533 (1988), and it argues there is no indication that the circuit court intended Slater's sentences on the armed robbery charges to be concurrent to his imposed-and-stayed sentence in the drug case. In

_____

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

the alternative, the State asserts that we should reject Slater's claim for additional sentence credit because Slater invited any error that the court may have made when it granted him only 164 days of credit.

¶4     We agree with Slater that under WIS. STAT. § 973.10(2)(b), the imposed-and-stayed sentence in the drug case did not begin to run until Slater was received in prison, which did not occur until after Slater's sentencing in the instant case. We further agree with Slater that although the circuit court did not specify whether Slater's armed robbery sentences were to be concurrent or consecutive to his imposed-and-stayed sentence in the drug case, in the absence of any evidence that the court intended to impose consecutive sentences, we must presume that the sentences are concurrent. Under these circumstances, we agree that Slater is entitled to sentence credit against his armed robbery sentences for the three years that he spent in custody after his probation was revoked in the drug case. We also reject the State's argument that Slater invited the court's error regarding the proper amount of sentence credit. We therefore reverse the orders denying Slater's motions for additional sentence credit, and we remand for the court to modify Slater's judgment of conviction to grant him a total of 1,258 days of credit.[2]

## BACKGROUND

¶5     Slater was charged in the drug case with felony possession with intent to deliver cocaine and misdemeanor possession of tetrahydrocannabinols (THC).

---

[2]  Slater asserts that he is entitled to a total of 1,260 days of sentence credit "for the entire time he spent in jail before sentencing" in this case. Slater was taken into custody as a result of the armed robbery charges on February 20, 2002. His sentencing on the armed robbery charges took place on August 1, 2005. "[A] defendant is not entitled to sentence credit for the date on which he or she is sentenced." *State v. Kontny*, 2020 WI App 30, ¶12, 392 Wis. 2d 311, 943 N.W.2d 923. Slater is therefore entitled to credit against his armed robbery sentences for each day that he spent in custody from February 20, 2002, to July 31, 2005—which totals 1,258 days.

Slater pled guilty to those counts, and the circuit court imposed and stayed a thirteen-year sentence on the cocaine count, consisting of three years' initial confinement and ten years' extended supervision, and placed Slater on probation for eight years. On the THC count, the court withheld sentence and imposed two years' probation, concurrent to Slater's term of probation on the cocaine count.

¶6 While he was on probation in the drug case, Slater was arrested and charged with three counts of armed robbery in the case underlying this appeal. As a result of Slater's arrest on the armed robbery charges, a probation hold was placed on him in the drug case on February 20, 2002, and he was taken to jail the same day. Slater's probation in the drug case was revoked in either May or June of 2002.[3] According to CCAP, on June 7, 2002, the circuit court held a sentencing-after-revocation hearing in the drug case and ordered Slater to serve three months in jail on the misdemeanor THC possession charge, consecutive to his imposed-and-stayed sentence.[4]

---

[3] The State contends that Slater's probation in the drug case was revoked on June 7, 2002. In support of that claim, the State cites information obtained from Wisconsin's Consolidated Court Automation Programs (CCAP). The State asserts, and Slater does not dispute, that we may take judicial notice of CCAP records. *See Kirk v. Credit Acceptance Corp.*, 2013 WI App 32, ¶5 n.1, 346 Wis. 2d 635, 829 N.W.2d 522. We note, however, that in the circuit court, Slater asserted that his probation was revoked on May 21, 2002. The appellate record contains a "Revocation Order and Warrant," which appears to confirm that date. Regardless, the issue of whether Slater's probation was revoked on May 21 or June 7, 2002, is not ultimately relevant to our disposition of this appeal.

[4] In addition to CCAP records, the State also relies on a transcript of the June 7, 2002 sentencing-after-revocation hearing in the drug case. While the State concedes that this transcript is not in the appellate record, it nevertheless included a copy of the transcript in the appendix to its appellate brief.

¶7    As noted above, the circuit court had already imposed and stayed a thirteen-year prison sentence on the cocaine charge in the drug case. However, when Slater's probation in that case was revoked, he was not transferred to prison to begin serving that sentence. Instead, Slater remained in the Marathon County Jail awaiting resolution of the armed robbery charges in the present case. In March 2005, a jury found Slater guilty of all three armed robbery charges.

¶8    Slater's sentencing on the armed robbery charges took place on August 1, 2005. At sentencing, the State asserted that Slater

> has served three years on his probation revocation case. He had three years, and ten years ES imposed, for a total of 13 years imposed and stayed hanging over his head at the time he committed these crimes. So in looking at that credit from June 7, 2002 to June 7, 2005, that leaves some other additional credit due him on whatever sentence the court imposes, which the state believes is 164 days.

The circuit court then asked Slater's attorney whether he had "a position on that," and counsel responded, "I have no objection to that calculation, your Honor." The court ultimately imposed thirty-year sentences on each of the three armed robbery charges, each consisting of twenty years' initial confinement and ten years' extended supervision. The court stated those sentences would be "served as

---

"An appellate court can only review matters of record in the trial court and cannot consider new matter attached to an appellate brief outside that record." *South Carolina Equip., Inc. v. Sheedy*, 120 Wis. 2d 119, 125-26, 353 N.W.2d 63 (Ct. App. 1984). An appendix may not be used to supplement the record. *Reznichek v. Grall*, 150 Wis. 2d 752, 754 n.1, 442 N.W.2d 545 (Ct. App. 1989). As such, the State's reliance on the June 7, 2002 transcript is inappropriate, and we decline to consider that transcript.

We also observe that neither Slater nor the State develops any argument that Slater's jail sentence on the THC possession charge in the drug case is relevant to our analysis of the sentence credit issue posed by this appeal. Accordingly, we do not further address the THC possession charge.

concurrent sentences to each other." Consistent with the State's representation, the court granted Slater 164 days of sentence credit.

¶9 In 2019, Slater filed a pro se motion seeking an additional 1,096 days of sentence credit against his armed robbery sentences, representing the three-year period from June 7, 2002, to June 7, 2005, which Slater contended would have resulted in total sentence credit of 1,260 days. The circuit court denied Slater's motion following a hearing. The court reasoned that Slater was serving his previously imposed-and-stayed sentence on the cocaine charge in the drug case during the relevant three-year period, which severed the connection between Slater's custody during that time and the course of conduct for which his sentences on the armed robbery charges were imposed. Postconviction counsel was subsequently appointed for Slater, and he filed a second motion asserting that Slater was entitled to sentence credit "for the entire time he spent in jail before sentencing: 1260 days." The court again denied the requested sentence credit, and Slater now appeals.

## DISCUSSION

¶10 Whether Slater is entitled to additional sentence credit under the undisputed facts of this case presents a question of law that we review independently. *See* **State v. Abbott**, 207 Wis. 2d 624, 628, 558 N.W.2d 927 (Ct. App. 1996). The sentence credit statute provides that a convicted offender "shall be given credit toward the service of his or her sentence for all days spent in custody in connection with the course of conduct for which sentence was imposed." WIS. STAT. § 973.155(1)(a). In deciding whether an offender is entitled to a particular amount of credit under the statute, a court must determine: (1) whether the defendant was "in custody" during the relevant time period; and (2) whether that

6

custody was "in connection with the course of conduct for which sentence was imposed." *State v. Johnson*, 2009 WI 57, ¶27, 318 Wis. 2d 21, 767 N.W.2d 207 (citation omitted).

¶11    Here, Slater seeks additional sentence credit for the three-year time period following the revocation of his probation in the drug case. It is undisputed that Slater was "in custody" during that time period. The disputed issue is whether that custody was in connection with the course of conduct for which Slater's sentences on the armed robbery charges were imposed.

¶12    Slater asserts—and the State does not dispute—that after he was arrested on the armed robbery charges in this case, he remained in custody on those charges on a $50,000 bond. It is also undisputed that beginning on February 20, 2002, Slater was in custody on a probation hold in the drug case as a result of the conduct underlying the armed robbery charges. Slater contends, and we agree, that both of these factual circumstances provide the necessary "connection" between his custody and the course of conduct for which his sentences on the armed robbery charges were imposed. *See* WIS. STAT. § 973.155(1)(b) (stating that the custody for which an offender is entitled to credit includes custody "which is in whole or in part the result of a probation, extended supervision or parole hold … placed upon the person for the same course of conduct as that resulting in the new conviction"). The question is whether that connection was severed when Slater's probation in the drug case was revoked.

¶13    Slater acknowledges that in *State v. Beets*, 124 Wis. 2d 372, 379, 383, 369 N.W.2d 382 (1985), our supreme court held that the connection between a defendant's presentence custody and the course of conduct for which sentence is imposed is severed when the defendant begins serving a sentence in a different case.

7

The circuit court concluded that *Beets* defeated Slater's claim for additional sentence credit because Slater began serving his previously imposed-and-stayed sentence in the drug case when his probation in that case was revoked. Slater argues, however, that under WIS. STAT. § 973.10(2)(b), his imposed-and-stayed sentence did not begin to run until he was received at Dodge Correctional Institution ("Dodge"), which did not occur until after his sentencing in this case. Slater therefore argues that his imposed-and-stayed sentence did not sever the connection between his presentence custody in the instant case and the course of conduct underlying his sentences on the armed robbery counts.

¶14 We agree. WISCONSIN STAT. § 973.10(2)(b) provides that if a probationer has already been sentenced and his or her probation is later revoked, the Department of Corrections shall "order the probationer to prison, *and the term of the sentence shall begin on the date the probationer enters the prison*." (Emphasis added.) Under this unambiguous language, Slater's imposed-and-stayed sentence in the drug case did not begin to run until the date Slater entered "prison." It is undisputed that after his probation in the drug case was revoked, Slater remained in the Marathon County Jail awaiting the resolution of the charges in the armed robbery case, and he did not enter "prison" until after he was sentenced on those charges. As such, Slater did not begin serving his imposed-and-stayed sentence in the drug case until after he was sentenced on the armed robbery charges. We therefore agree with Slater that the revocation of his probation in the drug case did not sever the connection between his presentence custody and the course of conduct for which his sentences on the armed robbery charges were imposed.

¶15 Our previous decisions in *State v. Presley*, 2006 WI App 82, 292 Wis. 2d 734, 715 N.W.2d 713, and *State v. Davis*, 2017 WI App 55, 377 Wis. 2d 678, 901 N.W.2d 488, support this conclusion. Both of those cases interpreted WIS.

STAT. § 304.072(4), which provides that the sentence of a person revoked from parole or extended supervision "resumes running on the day he or she is received at a correctional institution."

¶16    In *Presley*, the defendant was arrested and charged with delivery of a controlled substance while he was on extended supervision in a prior case. *Presley*, 292 Wis. 2d 734, ¶2.  As a result of the new charge, Presley's extended supervision was revoked. *Id.*  Presley was later sentenced on the same day "on both the revoked extended supervision and the new charge." *Id.*  Presley argued that he was entitled to credit against his sentence on the new charge for the entire time that he spent in custody between his arrest and his sentencing. *Id.*  The circuit court disagreed, concluding that Presley was only entitled to credit for the time spent in custody between his arrest and the date his extended supervision was revoked. *Id.*  In other words, the circuit court concluded that the revocation of Presley's extended supervision severed the connection between his presentence custody and the course of conduct for which his sentence on the new charge was imposed.

¶17    On appeal, we concluded that Presley was entitled to sentence credit from the date of his arrest until the date of his sentencing. *Id.*, ¶15.  We reasoned that under our supreme court's decision in *Beets*, "the lynchpin to the uncoupling of the connection between the new and old charges was the act of sentencing, not the revocation determination." *Presley*, 292 Wis. 2d 734, ¶9 (citing *Beets*, 124 Wis. 2d at 379).  We also relied on WIS. STAT. § 304.072(4), explaining:

> If the State's position were to be adopted—that Presley was serving a sentence once the extended supervision was revoked—it would appear to conflict with § 304.072(4), which unambiguously states that the sentence begins once the offender is transported and received at a correctional institution, not when the revocation occurs.

*Presley*, 292 Wis. 2d 734, ¶14.

¶18    We reached the same conclusion in *Davis*. Davis was on extended supervision when he was arrested for new offenses. *Davis*, 377 Wis. 2d 678, ¶2. His extended supervision was revoked, and twenty-three days later he was received at Dodge to begin serving his revocation sentence. *Id.* When he was later sentenced on the new charges, the circuit court awarded him sentence credit only up to the date of his revocation in the older case, reasoning that the date of revocation "was the date on which Davis was reconfined" in that case. *Id.*, ¶4.

¶19    We reversed on the issue of sentence credit, concluding that Davis was entitled to credit from the date of his arrest until the date he was received at Dodge. *Id.*, ¶10. We relied on the plain language of WIS. STAT. § 304.072(4), as well as our earlier decision in *Presley*, in support of the proposition that the "resuming of [Davis's] sentence in the earlier case," rather than the revocation of his extended supervision, "severed the connection between the two cases" for purposes of awarding sentence credit. *Davis*, 377 Wis. 2d 678, ¶10.

¶20    Although *Presley* and *Davis* interpreted and applied WIS. STAT. § 304.072(2), which pertains to the revocation of extended supervision, WIS. STAT. § 973.10(2)(b) similarly provides that when the probation of an individual who has already been sentenced is revoked, the individual's sentence begins to run "on the date [he or she] enters the prison." *Presley* and *Davis* therefore support our conclusion that Slater's imposed-and-stayed sentence began to run on the date he was received at Dodge, not on the date his probation was revoked.

¶21    The State does not meaningfully dispute Slater's interpretation of WIS. STAT. § 973.10(2)(b). Instead, the State argues that even if Slater is correct that he did not begin serving his imposed-and-stayed sentence until he was received

at Dodge, he is not entitled to the additional sentence credit that he seeks against his armed robbery sentences in the instant case because an "award of credit in these circumstances would constitute impermissible dual credit."

¶22 To explain further, the State asserts that "[i]f Slater is correct that he was awaiting transfer to prison to serve his revocation sentence for the three years he was in jail custody, then he would be entitled to credit for this custody time against the revocation sentence itself." The State correctly notes that dual credit—i.e., credit for a single period of custody against two or more sentences—is permissible only when the sentences are imposed concurrently. *See Boettcher*, 144 Wis. 2d at 100; *State v. Rohl*, 160 Wis. 2d 325, 330, 466 N.W.2d 208 (Ct. App. 1991). The State contends there is "no indication that the [circuit] court intended its sentences in this case [to] be concurrent to [Slater's] wholly separate probation revocation sentence." Accordingly, the State argues that granting Slater sentence credit against his armed robbery sentences for the three years that he spent in custody after his probation in the drug case was revoked would result in an impermissible award of dual credit.

¶23 There are two problems with the State's argument. First, there is nothing in the record to indicate whether Slater has been granted—or will be granted—sentence credit for the relevant three-year time period against his imposed-and-stayed sentence in the drug case. The State's argument regarding dual credit is therefore speculative.

¶24 Second, as Slater aptly notes, when pronouncing sentence on the armed robbery charges in this case, the circuit court did not state whether Slater's sentences on those charges would be concurrent or consecutive to his imposed-and-stayed sentence in the drug case. Our supreme court has long held

11

that "in the absence of a statute to the contrary, or judicial declaration in the sentence imposed, where there is a present sentence for another offense of one then actually or constructively serving a former sentence, the two sentences run concurrently." *Application of McDonald*, 178 Wis. 167, 171, 189 N.W. 1029 (1922). As such, Slater asserts that his sentences in this case must be deemed to be concurrent to his imposed-and-stayed sentence.

¶25 In response, the State notes that the court of appeals has questioned the continued vitality of the *McDonald* rule. *See State v. Morrick*, 147 Wis. 2d 185, 187, 432 N.W.2d 654 (Ct. App. 1988); *State v. Brown*, 150 Wis. 2d 636, 639, 443 N.W.2d 19 (Ct. App. 1989); *Rohl*, 160 Wis. 2d at 330-31. Be that as it may, the court of appeals has no authority to overrule, modify, or withdraw language from a supreme court opinion. *See Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997). Consequently, we are not free to disregard *McDonald*'s holding.

¶26 Moreover, while the court of appeals determined that the *McDonald* rule was inapplicable under the specific facts presented in *Morrick*, *Brown*, and *Rohl*, each of those cases is factually distinguishable from the instant case. In *Morrick*, we declined to apply *McDonald*'s holding in a case where the defendant's prior sentence had already been completed by the time he was sentenced in the case on appeal. *Morrick*, 147 Wis. 2d at 186-87, 191. We stated that under those circumstances, "[t]here was no sentence in existence on [the day of sentencing] with which the sentence imposed on that day could be concurrent." *Id.* at 188. In other words, we concluded the *McDonald* rule was inapplicable because the defendant "was neither 'actually [n]or constructively serving a former sentence'" on the date he was sentenced. *Morrick*, 147 Wis. 2d at 187 (quoting *McDonald*, 178 Wis. at 171; alteration in *Morrick*).

12

¶27     In ***Rohl***, the defendant sought credit against a Wisconsin sentence for 431 days that he had spent in custody in California. ***Rohl***, 160 Wis. 2d at 327-28. The defendant had already received credit for that time against a California sentence. ***Id.*** at 328. Relying on ***McDonald***, however, the defendant contended that he was entitled to the same credit against his Wisconsin sentence because the California court "did not indicate whether its sentence was concurrent with or consecutive to the Wisconsin sentence." ***Rohl***, 160 Wis. 2d at 330.

¶28     We rejected the defendant's argument, reasoning that ***McDonald***'s holding "must be taken in context. In ***McDonald***, the second prison sentence was imposed at a time when the offender was actually in prison serving the first sentence. Here, Rohl was not actually in Wisconsin prison custody serving a Wisconsin prison sentence when he was sentenced in California." ***Rohl***, 160 Wis. 2d at 330-31 (citation omitted). Stated differently, we concluded the ***McDonald*** rule was inapplicable because "[a]t the time the California court sentenced Rohl, there simply was no other custodial sentence to which the California sentence could be, or could be presumed to be, concurrent." ***Rohl***, 160 Wis. 2d at 332.

¶29     This case is unlike both ***Morrick*** and ***Rohl*** because on the date of Slater's sentencing, there *was* a sentence in existence to which Slater's sentences on the armed robbery charges could be made concurrent—i.e., Slater's imposed-and-stayed sentence in the drug case. As explained above, Slater had not finished serving that sentence at the time he was sentenced in this case because he had not yet been received in prison. Moreover, even if the circuit court mistakenly believed that Slater had already served the initial confinement portion of his imposed-and-stayed sentence at the time of his sentencing in this case, it is undisputed that he had not yet completed the extended supervision portion of that

13

sentence.[5] Thus, unlike in *Morrick* and *Rohl*, a prior sentence existed on the day of Slater's sentencing "with which the sentence imposed on that day could be concurrent." *See Morrick*, 147 Wis. 2d at 188; *see also Rohl*, 160 Wis. 2d at 332.

¶30 *Brown* is also distinguishable from this case. There, pursuant to a plea agreement, the parties jointly recommended that the circuit court sentence Brown to four years in prison, consecutive to an earlier sentence. *Brown*, 150 Wis. 2d at 638. After confirming both the attorneys' and Brown's understanding of the joint recommendation, the court stated, "Okay. The sentence will be then as stated on the record." *Id.* at 638-39. The court did not expressly state during its oral pronouncement of sentence whether Brown's sentence would be concurrent or consecutive to his prior sentence. *Id.* Brown's written judgment of conviction, however, stated that his sentence would be consecutive to the earlier sentence. *Id.* at 639.

¶31 Brown later moved to correct the written judgment of conviction to make his sentence concurrent with his sentence in the prior case. *Id.* On appeal, we recognized *McDonald*'s holding that in the absence of an express judicial declaration to the contrary, two sentences are deemed to run concurrently. *Brown*, 150 Wis. 2d at 639. We concluded *McDonald* was distinguishable, however, because *McDonald* did not involve a conflict between an oral sentencing pronouncement and a written judgment of conviction. *Brown*, 150 Wis. 2d at 640. We also noted that the prosecutor in *Brown* had placed the parties' agreement for a

---

[5] As Slater correctly observes, by making Slater's sentences in this case consecutive to his imposed-and-stayed sentence in the drug case, the circuit court "would have changed the total term of extended supervision … Slater would have to serve and also increased the time available for reconfinement if that supervision were revoked." Accordingly, even if the court erroneously believed that Slater had already completed the initial confinement portion of his prior sentence at the time it sentenced him in this case, the court still needed to make a determination as to whether Slater's sentences in this case were concurrent or consecutive to his prior sentence.

recommended consecutive sentence on the record during the sentencing hearing, and the circuit court had stated its intention to impose the sentence "stated on the record." *Id.* We reasoned that nothing "even remotely similar" had occurred in *McDonald*. *Brown*, 150 Wis. 2d at 640.

¶32 We ultimately held in *Brown* that when a circuit court's oral pronouncement of sentence is ambiguous, "[t]he intent of the sentencing judge controls the determination of the terms of a sentence, and we look to the record as a whole to determine that intent." *Id.* at 641-42. We concluded that in Brown's case, the entire record showed that the court intended Brown's sentence to be consecutive to his prior sentence. *Id.* at 642.

¶33 More recently, this court applied a similar analysis in *State v. Oglesby*, 2006 WI App 95, 292 Wis. 2d 716, 715 N.W.2d 727. As in *Brown*, the circuit court in *Oglesby* did not specify during its oral sentencing remarks whether Oglesby's sentence would be consecutive or concurrent to a prior sentence; however, Oglesby's written judgment of conviction stated that the two sentences would be consecutive. *Oglesby*, 292 Wis. 2d 716, ¶8. Oglesby subsequently argued that her judgment of conviction should be amended to reflect that the two sentences were concurrent. *Id.*, ¶1.

¶34 On appeal, we concluded the circuit court's oral sentencing remarks were ambiguous as to whether Oglesby's sentence was concurrent or consecutive to her prior sentence. *Id.*, ¶18. We therefore stated it was necessary to "look to the full record in this case, including the judgment of conviction, in determining the trial court's sentencing intent." *Id.*, ¶21. We noted, however, that Oglesby "[came] to the debate with a threshold advantage" because *McDonald* created a "presumption" that when an offender is actually or constructively serving a sentence

15

for one offense and is then sentenced for a different offense, "the second sentence will be deemed to run concurrently with the first sentence *in the absence of a statutory or judicial declaration to the contrary.*" **Oglesby**, 292 Wis. 2d 716, ¶21 (quoting **Rohl**, 160 Wis. 2d at 330). We therefore stated that the operative question was "whether the record, including the judgment of conviction, rebuts that presumption." **Id.** We then concluded that under the particular facts of Oglesby's case, the record as a whole did not "rebut[] the presumption of a concurrent sentence." **Id.**, ¶¶33-34.

¶35 The facts of this case are more similar to **Oglesby** than **Brown**. In **Brown**, the record clearly showed that the circuit court intended to adopt the parties' joint recommendation that Brown's sentence be consecutive to his prior sentence. That is not the case here. There is nothing in the record to indicate that the court intended Slater's sentences on the armed robbery charges to be consecutive to his imposed-and-stayed sentence in the drug case. As in **Oglesby**, we therefore conclude that the record as a whole does not rebut the presumption created by **McDonald** that Slater's sentences on the armed robbery charges are concurrent to his imposed-and-stayed sentence.

¶36 The State argues the circuit court cannot possibly have intended Slater's sentences here to be concurrent to his imposed-and-stayed sentence because the court believed that sentence had already been served while Slater was in the Marathon County Jail awaiting the resolution of this case. However, any belief by the court that Slater had already served the imposed-and-stayed sentence was erroneous, as under WIS. STAT. § 973.10(2)(b), Slater did not begin serving that sentence until he was received in prison. There is nothing in the record to indicate whether the court would have made Slater's sentences in this case concurrent or

consecutive to his imposed-and-stayed sentence had it understood that Slater had not yet begun serving that sentence.

¶37    In addition, as noted above, even if the circuit court mistakenly believed that Slater had already served the initial confinement portion of his imposed-and-stayed sentence, it is undisputed that Slater had not yet completed the extended supervision portion of that sentence on the date of his sentencing in this case. As such, the court still needed to specify whether Slater's sentences in this case were concurrent or consecutive to his prior sentence. Under these circumstances, we reject the State's argument that any misunderstanding by the court as to whether Slater had already served the imposed-and-stayed sentence shows that the court cannot possibly have intended his sentences in this case to be concurrent to that sentence.

¶38    The State also relies on *State v. Jackson*, 2000 WI App 41, ¶19, 233 Wis. 2d 231, 607 N.W.2d 338, in which we stated that dual credit is not permitted "where a defendant has already received credit against a sentence which has been, or will be, separately served." *Jackson* is distinguishable. In that case, the defendant sought credit against his sentences in a Fond du Lac County case for a period of presentence confinement; however, it was undisputed that the defendant had already received credit for the same time period against his sentences in a Dodge County case. *Id.*, ¶¶3, 6. Moreover, it was also undisputed that the defendant had "already served" his Dodge County sentences before he was sentenced in the Fond du Lac County case. *Id.*, ¶19. Because the defendant had already received credit for the custody at issue against his Dodge County sentences and had already served those sentences, we concluded he was not entitled to dual credit for the same period of custody in the Fond du Lac County case. *Id.*

17

¶39    Conversely, in this case, there is nothing in the record demonstrating that Slater has already received sentence credit for the time period at issue against his imposed-and-stayed sentence in the drug case. Moreover, as explained above, at the time of his sentencing in this case, Slater had not "already served" the imposed-and-stayed sentence. Consequently, the circumstances that led us to conclude that an award of dual credit was not permissible in *Jackson* are not present here.

¶40    The State next argues that even if the circuit court erred by awarding Slater only 164 days of sentence credit, Slater is not entitled to relief because he invited the court's error in that regard. "Generally, where a party 'invites error' on a given issue, we will not review the issue on appeal." *Fosshage v. Freymiller*, 2007 WI App 6, ¶15, 298 Wis. 2d 333, 727 N.W.2d 334 (2006). The doctrine of invited error is related to the doctrine of judicial estoppel,

> which is based on the notion that "[i]t is contrary to fundamental principles of justice and orderly procedure to permit a party to assume a certain position in the course of litigation which may be advantageous, and then after the court maintains that position, argue on appeal that the action was error."

*Id.* (citation omitted; alteration in *Fosshage*). Stated differently, under the doctrine of invited error, "[a] defendant cannot create his [or her] own error by deliberate choice of strategy and then ask to receive benefit from that error on appeal.'" *State v. Gary M.B.*, 2004 WI 33, ¶11, 270 Wis. 2d 62, 676 N.W.2d 475 (citation omitted).

¶41    The State argues that Slater invited the circuit court's error with respect to sentence credit when his trial attorney agreed with the prosecutor's representations during the sentencing hearing that: (1) Slater had already served the three-year initial confinement portion of his previously imposed-and-stayed

sentence; and (2) Slater was entitled to 164 days of sentence credit. The State contends the court relied on the parties' agreement that these representations were correct when it summarily awarded Slater 164 days of sentence credit.

¶42 We reject the State's argument that Slater invited the circuit court's error. There is nothing in the record indicating that Slater's trial attorney made a deliberate choice to agree with the prosecutor's representations regarding sentence credit, even though he knew that the prosecutor was mistaken, in order to gain a strategic advantage. The State cites no evidence that trial counsel's agreement with the prosecutor's representations was the result of anything other than a mistake. The invited error doctrine is inapplicable under these circumstances.

¶43 Applying the invited error doctrine in this case would also be inconsistent with our prior decision in *State v. Kontny*, 2020 WI App 30, 392 Wis. 2d 311, 943 N.W.2d 923. There, the parties agreed during sentencing that Kontny was entitled to 161 days of sentence credit, and the circuit court therefore granted him credit in that amount. *Id.*, ¶3. Kontny later filed a postconviction motion seeking one additional day of sentence credit, but the court denied his motion on the grounds that the parties' prior agreement regarding the amount of sentence credit was "binding." *Id.*, ¶4.

¶44 On appeal, the State conceded that the circuit court's reasoning was erroneous, and we agreed with that concession. *Id.*, ¶8. We explained that an award of sentence credit under WIS. STAT. § 973.155 is "mandatory," and a sentencing court is required to give a defendant the credit "accorded by statute." *Kontny*, 392 Wis. 2d 311, ¶9 (citations omitted). We further reasoned that the plain language of § 973.155 does not authorize the parties to agree to an amount of sentence credit that differs from the amount to which the defendant is entitled under the statute.

19

*Kontny*, 392 Wis. 2d 311, ¶9. We therefore held that "an agreement between the parties as to the proper amount of sentence credit—even if adopted by the circuit court during the sentencing hearing—does not prevent a defendant from later arguing in a postconviction motion that the amount of sentence credit awarded by the court was erroneous." *Id.*

¶45 Here, as in *Kontny*, the parties agreed during sentencing as to the amount of sentence credit to which Slater was entitled. Under the reasoning set forth in *Kontny*, that agreement should not prevent Slater from now arguing that he is entitled to additional sentence credit. There is nothing in the record to indicate that Slater did anything more to invite the circuit court's alleged error regarding sentence credit than the defendant did in *Kontny*. Thus, consistent with our decision in *Kontny*, the fact that Slater's trial attorney agreed with the prosecutor's representations regarding sentence credit during the sentencing hearing does not prevent Slater from challenging the amount of sentence credit that the court awarded.

¶46 For all of the foregoing reasons, we reverse the circuit court's orders denying Slater's postconviction motions for additional sentence credit. We remand for the court to modify Slater's judgment of conviction to grant him a total of 1,258 days of credit.

*By the Court.*—Orders reversed and cause remanded with directions.